May it please the Court, I am Laird Ashenbrenner, attorney for the Italic Villages. I would like to reserve five minutes for rebuttal. The District Court's holding that the Villages' non-exclusive aboriginal hunting and fishing rights conflicts with federal paramountcy is in direct conflict with this Court's decision in Gamble 3 that such rights do not conflict with federal paramountcy. The Secretary, however, argues that the claims in Gamble 3 are different from the claims here because in Gamble 3 the Villages only claimed subsistence rights, whereas here they also claimed the right to fish commercially. However, in both cases the Villages simply claimed non-exclusive aboriginal hunting and fishing rights under the common law. The Gamble 3 Court applied the term subsistence to the Villages' aboriginal claims, probably because the briefing had focused on the subsistence protections of the Villages' claim under ANILCA, but the Court's use of the term subsistence in reference to their alternative aboriginal claim could not have been intended to limit the Villages' rights to the statutory existence definition of ANILCA when the Supreme Court had just ruled that ANILCA did not cover the OCS. Further, that the use of the term subsistence in Gamble 3 was not intended to severely restrict the broad aboriginal rights historically recognized by the U.S. Supreme Court is strongly supported by the fact that the question as to what specific activities or practices would be encompassed within their aboriginal rights was never raised, argued, debated, or discussed by either the District Court or this Court. In any event, use of the term subsistence in Gamble 3 would not necessarily exclude fishing for commercial purposes. Black's Law Dictionary defines subsistence to include, quote, the means of procuring a livelihood, unquote. This obviously could include making a living through commercial fishing. Finally, in E. Act 1, this Court expressly distinguished the claims in Gamble 3 not on some non-commercial basis, but solely on the ground that in Gamble 3 the villages were only claiming non-exclusive rights, whereas in E. Act 1 they were claiming exclusive rights. May I ask a question which I guess goes to trying to figure out what aboriginal rights are? Now, I realize the Court hasn't actually done that yet, and there hasn't been any factual finding on that, but would aboriginal rights as a term, in your view, include what has traditionally been known as subsistence plus recreational, plus commercial, plus other, I guess? Yes. Or is there something else? Is it the whole ball of wax? Well, aboriginal title is the whole ball of wax. It is the right to have exercise complete dominion and use all the resources in the area, or not use them as the tribes choose it. So if you have total and complete dominion, then you can use it for commercial, sports, recreation, and so on. So do you distinguish aboriginal title from aboriginal rights? Yes, I do. I distinguish aboriginal title from aboriginal hunting and fishing rights. Aboriginal hunting and fishing rights, the Secretary agrees, are an inherent component of aboriginal title. In fact, in most cases, aboriginal title is based upon long-term hunting and fishing within an area. If now the claim is non-exclusive aboriginal fishing rights, is that what this claim is? That's correct, Your Honor. What is the kind of legal or even maybe etymological origin of this if you have non-exclusive rights when you said aboriginal rights actually are complete dominion? How do you mesh those concepts? I guess I'm trying to understand this so I can try to figure out what these cases are saying as well. All aboriginal rights, well, aboriginal title is based on long-term use and occupancy, which gives the tribes complete dominion over the territory. That sounds inconsistent with non-exclusive. But in Gamble 4, this court held that the villages' exclusive hunting and fishing rights conflicted with federal paramountcy. But in Gamble 3, this court said that non-exclusive rights did not conflict. So we have a situation where the tribes can no longer exercise exclusive rights, but their non-exclusive rights remain intact. This is exactly what happens fairly frequently when the United States enters into a treaty with a tribe that originally has aboriginal title and it extinguishes that aboriginal title for their exclusive fishing rights like the U.S. v. Washington fishing rights cases in Washington, like U.S. v. Michigan. So either by treaty or statute, Congress can extinguish their exclusive rights, leaving their non-exclusive rights intact. We say this is precisely what happened with your two cases of Gamble 3 and EAC 4. EAC 4 extinguished exclusive rights. Gamble 3 left non-exclusive rights intact. Congress can do that, can we? Pardon? Congress can do that, can we? Can you? What you're really saying is a partial extinguishment, I suppose. Congress, of course, could completely wipe out all these aboriginal rights tomorrow. Yes, Your Honor. But what you're saying is, well, our case in the first EAC case eliminated the exclusive aboriginal title, but our earlier case left the non-exclusive aboriginal title. Well, you just said Congress can extinguish the aboriginal title. Does that mean the courts can extinguish partial title? No, Your Honor. That's the point I was going to make. Sounds like what we've got. Well, no, I think you have not. Your EAC 4 case did not say that exclusive aboriginal hunting and fishing rights were extinguished. It merely said that they couldn't be recognized and they couldn't be exercised. There's a big difference. I agree that only Congress, with its plenary power, can extinguish aboriginal rights. This court can legitimately say, well, but you can't exercise them. But if they are not extinguished, of course, then there were pre-existing rights there when these savings clauses we rely upon took effect. More so, if the United States tomorrow said we no longer claim rights to 200 miles, it would revive the possible claim of exclusive rights. In other words, if the United States said we're no longer paramount out to 200 miles, you're saying these exclusive rights that may well be in abeyance would perhaps revive. I think that's correct, Your Honor. I hadn't thought about that, but I think that's correct. So you're not really saying that we extinguished or didn't extinguish. You're simply saying that, in your view, the title is unexcused, but our court has simply, based on paramountcy, determined you can't assert exclusive rights. Would that be accurate? That's accurate. In short, to sum up this first argument, there is no difference between the claims in Gamble 3 and the claims here. Both were non-exclusive aboriginal rights, and they cannot be distinguished, and therefore the district court's conclusion that federal paramountcy extinguished non-exclusive rights is in direct conflict with Gamble 3. Next point. The secretary denies that the villagers' rights have been protected by a federal statute and claims that aboriginal fishing rights simply cannot exist in the absence of a treaty or statute. This is in direct conflict with black-letter law holding that aboriginal title does not depend on a treaty or statute. In fact, the secretary agrees, and it is undisputed, that aboriginal title arises from long-term use and occupancy and is not based on a treaty, statute, or any other formal governmental action. That's Santa Fe Railroad. It is also disputed, undisputed, and the secretary agrees that aboriginal hunting and fishing rights are an inherent component of aboriginal title. Well, if aboriginal title can exist without recognition by treaty or statute, there is no reason why its inherent component cannot likewise so exist. Now, it's true that in the Waukegan case, this court noted that in the past, aboriginal hunting and fishing rights had only been recognized in the context of the interpretation of a treaty or statute. That, of course, as we pointed out, agrees with dicta because the court had already determined that the Chinook tribe's aboriginal title had been extinguished. And in footnote four, the court expressly said, therefore, we do not decide whether they may have had aboriginal fishing rights before the extinguishment. Now, the reason why, and I think this is an important point, the reason why aboriginal hunting and fishing rights have only been recognized  is because in all other cases, the issue has been the existence of aboriginal title. Consequently, the existence of aboriginal hunting and fishing rights has been subsumed under that broader issue. Nor is there any policy reason for holding that the extinguishment of exclusive rights automatically extinguishes all rights. In fact, the policy reasons are to the contrary. As this court said in gamble three, you quote, humanity demands and a wise policy requires that the aboriginal subsistence rights of the villages not be ignored, unquote. And the gamble three panel did not ignore them, and that's what we asked this court to do. Finally, this case is distinguished from Waukegum on at least three grounds. First, here, unlike Waukegum, the villages' aboriginal rights to the OCS have never been extinguished by Congress. The Alaska Native Plains Settlement Act only extinguished aboriginal rights out to the state stream on a limit. Second, the Paramouncy Doctrine, according to this court, never extinguished their rights. It merely barred them from asserting exclusive rights. And third, the villages' rights have been recognized by four separate statutes. That's the point I would like to get to next. The villages have argued that the savings clauses of the Submerged Lands Act, the Outer Continental Shelf Lands Act, and the Magnus Act are a congressional determination that aboriginal rights do not violate federal paramouncy. The district court, however, holds that the village rights were already extinguished by federal paramouncy, so there were no pre-existing rights for these savings clauses to preserve. We submit the Secretary is wrong on at least two grounds. First, as I've said before, the Paramouncy Doctrine did not extinguish aboriginal rights. It merely barred their exercise. Consequently, there were pre-existing rights for the savings clauses to preserve. I don't know if the savings clauses add anything to your argument. You still have to win your first argument that you have aboriginal rights, and then the savings clause prevents any of these statutes from interfering with them or obliterating them. But it seems to me you still have to win on your first proposition. Well, I think that's right, Your Honor. In other words, if you had no aboriginal rights, the savings clauses wouldn't create them. No, I agree with that, Your Honor. So I don't know how much it adds to your argument. Well, I think that all the savings clauses do is negate the prohibition on the exercise of rights that the Paramouncy Doctrine would otherwise effect. I mean, the provision that says that the status of these newly acquired lands should have the same status as lands acquired by session or annexation. Or in the alternative, the doctrine of discovery applies to them, was intended to preserve these pre-existing rights that existed before Paramouncy took hold. I mean, if the Secretary were correct and all the non-federal interests in the OCS were already extinguished, then these savings clauses would serve no purpose. Consequently, the only reasonable construction of the clauses is that they were intended to preserve rights with federal Paramouncy would otherwise have precluded. Finally, or rather further, the Secretary admits that the savings clause preserved rights under the Mineral Leasing Act and Indian Tree Fishing Rights because they are referred to in the legislative history. Well, we submit if such rights were preserved because they were mentioned in the legislative history, then aboriginal rights, which were also referenced in the legislative history, were likewise preserved. You want to save some time? You're down to three and a half minutes. Yes, Your Honor. Thank you. May it please the Court. I am David Shilton representing Secretary of Commerce Evans here. The District Court in this case rejected a challenge to the Secretary's 1993 regulations, which implemented an individual fishing quota permit system for commercial fishing for halibut and sable fish and imposed various restrictions on commercial and sport fishing. The Court found that even if the villages could show that the factual prerequisites for making a claim of aboriginal rights could be made out, that the assertion of an ability to fish free of federal regulations in areas beyond the three-mile limit of state jurisdiction was simply inconsistent and precluded by federal paramounts in this area. We think that ruling was correct. We also contend that the challenges to these regulations could be rejected on a number of alternative grounds, including, first, that the claims of aboriginal fishing rights cannot exist where aboriginal title has been precluded or extinguished and there's no treaty or reservation that secures those rights, which there's not here. Second, that even if the claims could be established, they would not form the basis for objecting to non-discriminatory conservation regulations, which these are. But I suppose if the right existed and hadn't been extinguished, a special account might have to be taken of it, a little bit the way it is of a treaty right. In other words, you can set fishery limits offshore in Indian treaty cases and you can apply those limits to the tribes, but they have to have special consideration. They can't just be along with everybody else. I would point to the Supreme Court's decision in Organized Village of Cake v. Egan on that question because it's a very pertinent case because it did involve a claim of aboriginal rights. The Supreme Court in that case had no difficulty finding that Alaska's statute, which prohibited the use of fish traps generally, applied there. The deal of water has gone through the wheel since the Washington passenger fishing vessels. Right, but I think it is significant that the Washington vessels and those cases do involve treaty rights, and I think those are significantly different than the claims of aboriginal rights here, and probably bring in different considerations. But even those treaty rights can be limited by conservation. It's clear they could be limited. I guess the question I would have, right now we're, of course, talking in the abstract about these aboriginal rights. We don't know if they existed, what the confines of those rights would be, but in the abstract it would seem to me that if you had certain rights, whether they were limited to subsistence or more what we might think of as a broader commercial fishing right, that you might need to balance that aboriginal right against the regulation in some way, which means they could coexist because their aboriginal rights wouldn't be exclusive. And are you telling us that you don't think that they would even need to be balanced against regulation? Well, I think what the claim is here is the ability to fish commercially without an IFQ permit, and certainly that claim is one that is very much in conflict with the whole system of limited entry permits. I guess if we, an IFQ might be consistent with aboriginal rights weighed off against the United States' significant interest in controlling and managing its offshore waters, but would you need to make that determination? In other words, in the face of aboriginal rights, as opposed to just saying, boom, we have an IFQ program and you're either in or you're out, and we don't care if you have any aboriginal rights. Well, there are two answers to that. I think cake is still good law, and there was no such consideration. And two, I would point out that consideration has been given fairly recently to subsistence rights by the recent amendments to the regulations which set up the subsistence fishing program for Halibut. But I think the main point here is that these assertions of fishing rights, which aren't secured by treaty or statute, simply can't exist in this area. And I think that the first EAC case is very important because it defines that aboriginal title and exclusive rights based on that aboriginal title is simply inconsistent with federal paramountcy beyond three miles because, as the court said, quoting from the United States v. Texas case in the Supreme Court, that once you get beyond three miles, all property and sovereignty interests have to coalesce into the federal sovereignty. And this court found that aboriginal title simply could not coexist with that regime of federal sovereignty beyond three miles. And that's, you know, I think one reason why Gamble III is not controlling here because EAC I was decided after that, and so was the Chehalis case. And if you put those two cases together, number one, the EAC saying that aboriginal title can't exist beyond three miles, and the Chehalis case where in 1996 this court said that if aboriginal title is gone, then you can't have aboriginal hunting and fishing rights left unless they are secured by a treaty or statute. And we don't have that here. So that's, I think, one reason why Gamble III is not applicable here. The other reasons are that the conflict here with the federal regime is much more significant. The plaintiffs are claiming the right to fish contrary to federal law, that the IFQ regulations would not allow them to fish as they would like. That was not the situation in Gamble III. Gamble III was simply a situation where this court said that aboriginal subsistence rights may exist to protect existing subsistence against significant interference from violent gas leasing. And then thirdly- Can I stop you on that? That argument, in my view, I wondered if that's not just begging the factual question. In other words, in the oil and gas situation, they were saying if you had certain subsistence rights, which we don't know if you do because we haven't had a trial on that, and I guess ultimately it gets moot. But if you have that right, you might be able to weigh it off against this drilling because that might completely extinguish the subsistence right. You're saying now, well, that was different because it was limited to this certain kind of subsistence right, which they would have had to go back and establish. Isn't that also the question here? We don't know what the shape of the box is. And this case could be exactly like the oil and gas case, could it not? Well, we do know the shape of the box and the way the players have played their case and that the arguments they have made are substantially- they're describing a right which is substantially greater than that. I think that was involved in Gamble 3. And they're really asking for a right which is in every way analogous to the treaty fishing rights that, say, the Macaws have in the state of Washington. But even the Macaws can be subject to limitations for conservation purposes. I don't know whether you're inviting us to say, well, we don't have to decide if they have aboriginal rights because if they did, even those would be subject to conservation limitations of some sort. And since they've asked for unlimited fishing without any favor of regulation, we can simply affirm on this ground it's different from that which the district court used. Is that what you're saying we could do? You could. That's very much our second choice or maybe even our third. Our first is what we think you should do is affirm on the grounds that the district court used, which is that the logical implication of the first EF case is that these non-exclusive claims are also precluded. I guess in response or in elaboration to my last question, another way of reacting to the same perception would be, well, we're not sure whether there are aboriginal rights. If there were, they would be subject to some limitations. But the district court held there were none. And we think there are some, so we'll send it back. And they can decide how much those rights would have to be limited for conservation purposes. But I think there's much to what you say in EOC. The trouble is EOC neither purported to overrule Gamble 3 nor had the power to overrule Gamble 3. And Gamble 3 seems to be pretty explicit. Right. But I think that Gamble 3 was a somewhat tentative ruling. It did say that these types of rights may exist. And then, as has been noted, the case really did go moot later on before anyone was able to develop those theories. These are totally undeveloped. We don't know what we have. These are undeveloped. But EAC 1 was a final judgment on the aboriginal title claims and holds firmly without any tentative nature that aboriginal title can exist. And as Cassell said, typically our aboriginal title is a whole ball of wax, and really everything else flows from aboriginal title. And as this court's cases in Waukegan as well as Chehalis have indicated, that once an aboriginal title is gone, then unless you need some sort of treaty or statute to... Well, there's much to what you say, and I would have believed it before the Supreme Court told us that there might be such a thing as individual aboriginal title. Well, unfortunately, I don't think we need to deal with that here, in that the claims here are made on behalf of the villages, they're communal aboriginal rights claims. And really, they're the same type of right that was involved in EAC 1, except they're purely non-exclusive. Yeah, I guess... It's certainly true the land-based aboriginal title is gone, all because of the three-mile limit. But I'm not sure that what existed beyond that is as incomplete as you think it was. If you walk out on an ice 65 miles, and you have for a long time to fish it, I don't know what kind of title you've got, but it's not very ephemeral. Well, but I think that the legal regime, once you get beyond three miles, is very unique. This whole paramouncy doctrine really has no analog on shore. It really has to do with the international relations and importance of this area. Well, it's part of the original doctrine of discovery. The whole idea of the doctrine of discovery was, look, we've planted our foot in everything, all this land around here, for the United States, or for the Kingdom of England, or the Kingdom of Spain, or something. But of course, it's subject to the existing aboriginal rights. We can extinguish those when we get around to it, if we want to. But the fact that this is paramount, we have a paramount claim with regard to all the other foreign powers in the world, doesn't affect the indigenous rights that are there now. Well, I think the EAC-1 rejects that theory and says that in this area, the fact that- You can't reject John Marshall's decisions in the Supreme Court. The Supreme Court might, but I don't know the EAC-1. I think saying that the aboriginal title is simply inconsistent with the principle that all title and sovereignty have to coalesce in the federal government really applies equally here. And especially when you're dealing with a right that's not secured by a treaty or statute. Now, I don't think any of the statutes that counsel has pointed to make any difference here. As has been pointed out, they would only preserve something which already existed. And as the district court found here, the federal paramountcy was in effect, certainly as of 1950 when the Supreme Court cases were decided, and the statutes that are relied on came along after that. And the references in the statutes are, in the Autocognition Lands Act, are to simply preserving rights that are acquired under federal law by individuals. And that's not a statement of the sort that would apply to aboriginal rights, which are communal rights, not individual rights, and are not rights that are acquired. They've simply existed through long usage. So I don't think there's anything that's saved there. The Magnuson Act simply says that the fishery management measures have to be consistent with applicable law, and the treaties are applicable law, no question about that. But, you know, here the very question is, is aboriginal rights that are unsecured by treaty applicable law? And I think it's clear that they're not. Could I go back to the plaintiff's original theories and just try to understand your view on that? If their theory is that you can't have any regulation, does that in practice convert itself into, in effect, some sort of an exclusive claim? Well, again, I can't really speak to how far they would push. I'm not sure how, but I'm just asking you in terms of how this is framed. You were suggesting a way for us to look at it more narrowly than getting into the quagmire of, not your preferred way, but then getting into the quagmire of all the nuances of aboriginal rights. So I wanted to go back and make sure I understood your point on that. Right. Yeah. The point is simply that the case law indicates that even if fishing rights exist, tribal fishing rights, that they are subject to nondiscriminatory laws that are meant for the conservation of the resource. And so I think all we have to show to that standard is that these regulations are for that purpose, and I think clearly they are. They were instituted in order to avoid the situation which had arisen with the prior regime, which was an open access regime where you simply had to keep shortening the seasons until it was a tiny season and people got bigger and bigger boats, and there was a tremendous amount of wastage and it was very unsafe. So these are conservation regulations, and I think would be applicable even if these aboriginal rights existed. But certainly we think the way the court should go is to go the same way as the district court, find that federal paramountcy precludes these rights, and also that even if federal paramountcy doesn't, that the doctrines of this court in the Chehalis and Wakiathan case, that once aboriginal title goes, and that's what EAC says is aboriginal title is gone, that hunting and fishing rights don't survive that unless they're secured by treaty or statute, and you don't have a treaty or statute here. Now, as if that weren't enough alternative grounds, we do have the statute of limitations ground. But that would only apply to disabled fish, though, because that's the biggest thing. Unless there are questions about that or other, that's all. Thank you. The subsistence rights include the right to fish and to sell commercially. We don't think it would include the right to sell commercially, certainly in the way that plaintiffs interpret commercially. The very recent regulations which allow subsistence fishery do allow customary trade, but that's not the commercial fishing that the plaintiffs would like to exercise here. They would like to have a share of the commercial fisheries like the Macaws do under their trees. So we don't think that's subsistence trade. Commercial trade, that would encompass selling fish to neighbors and what? The customary trade that's involved in the regulations is the right to sharing fish in the community or trading for bartering for that sort of thing, whatever they've gone on customarily in the community, but not the selling large numbers of fish. Small scale. Right, right. But so we think in general subsistence means what typically would mean in the dictionary, which would be living off the land. Well, how do you how do you interpret subsistence? What's your definition? Well, that's the problem, Your Honor. There isn't any definition in Gamble three. I'm just asking you what's your. I would I would construe it in the way that Black's Law Dictionary construes it, which I just quoted to you a minute ago, which is that it includes, among other things, the right to secure a livelihood, which obviously could include fishing for commercial purposes. The problem is that there is no definition of subsistence in Gamble three, and the definition that the secretary is talking about is the definition in the Milka, it's a statutory definition, and it doesn't apply to the OCS. So just by using the word subsistence in Gamble three, we suggest this court really didn't intend to just enormously restrict the historically broad aboriginal rights the U.S. Supreme Court has recognized. Well, I don't know. I've always thought subsistence meant that you could go out there and hunt and fish for your own subsistence to keep yourself and your family and your villagers alive with food. I never envisioned it. Maybe some sales here and there, but I never envisioned that as encompassing a large-scale commercial enterprise. Well, I mean, is that what you're after? Can you answer that question? Is that what you're after? Yes, we're after the total right to fish, an aboriginal hunting and fishing right, a non-exclusive right for any purpose, commercial, subsistence, sports, anything, because that's what aboriginal rights encompass. They're not restricted to subsistence purposes. And you want that unrestricted? Pardon me? In other words, you want that unrestricted of any government regulations, is that correct? Yes, but that's my next point. We're not saying that the tribes would not be subject to government regulations. We're just saying they're not subject to the Magnuson Act regulations because the Magnuson Act does not clearly and unambiguously express an intent of Congress to extinguish or severely restrict aboriginal rights. In Oneida v. Oneida, the Santa Fe case, say that the Congress cannot extinguish or restrict aboriginal rights unless the intent of Congress is clear and unambiguous. Now, all Congress has to do is go back and patch it up and say, hey, we intended to include aboriginal rights on the OCS. Boom. They've got it. Also, those regulations don't apply to us because the district court was correct. They don't even purport to assume or admit that any aboriginal rights exist, so they do not in any express or other ascertainable way include tribal aboriginal rights. So, we readily admit Congress can cure the problem and then the secretary can pass regulations that would regulate aboriginal rights. They just haven't done so yet in a clear and unambiguous way. The secretary again quotes from the work, cites the legislative history of the Savings Clause of OCSLA and fails to mention that it does expressly include the Doctrine of Discovery, which, as Judge Candy points out, is the rationale for the aboriginal rights and has been so since before the United States came into being. And, once again, the secretary insists that EAC says that aboriginal title can't exist. That's not what EAC said. It just said you can't exercise exclusive fishing rights. It didn't extinguish those rights. So, if you have no further questions. Thank you. Appreciate the argument.
judges: Pregerson, Canby, McKeown